CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 26 2012

JULIA C. DUDLEY, CLERK
BY: _____
        DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

KELVIN A. CANADA,                    )          Civil Action No. 7:11cv00499
                                     )
    Plaintiff,                    )
                                     )          **MEMORANDUM OPINION**
v.                                   )
                                     )
SGT. WILLIAM WRIGHT *et. al.*,       )
                                     )          By: Samuel G. Wilson
    Defendants.                   )          United States District Judge

This is an action pursuant to 42 U.S.C. § 1983 for injunctive relief and damages by plaintiff Kelvin A. Canada, a Virginia inmate proceeding *pro se*, alleging that the defendants, all employees of Red Onion State Prison ("ROSP") at the time of the alleged incidents, violated his Eighth Amendment right to be free from cruel and unusual punishment.[1] Canada alleges that various defendants (1) used excessive force by continuing to punch, kick, and scratch him after he was fully restrained, nonbelligerent, and lying on his stomach following a forceful cell extraction; (2) were deliberately indifferent by not intervening; (3) "sadistically" placed him in ambulatory restraints; (4) refused to provide an ice pack to soothe pain from his injuries; and (5) refused to give him a dinner tray. The defendants have moved for summary judgment. They maintain that Canada was combative during the cell extraction and that the force they used was necessary to regain control and secure Canada after he apparently fell while approaching the extraction team with a homemade knife, that the use of ambulatory restraints was appropriate, that Canada refused the ice pack, and that missing dinner for one night is not an Eighth Amendment violation. Though Canada's credibility may be subject to question in light of the

---

[1] The defendants are Sgt. William Wright, Sgt. Paul Payne, Lt. Delmar Tate, Sgt. Jeffery Hartsock, C/O Billy Large, C/O Bradley Milgrim, C/O Stanford Fields, Richard Rowlette, Capt. Stacy Mullins, Lt. Blevins, Capt. Dewayne Turner, and Lt. Joe Fannin.

numerous frivolous claims he has filed in this court,[2] the court is not at liberty to make credibility determinations on a motion for summary judgment, and here there is a factual dispute as to whether various defendants punched, kicked, and scratched Canada while he was fully restrained, nonbelligerent, and lying on his stomach and whether others failed to intervene. Accordingly, the court denies the defendants' motion for summary judgment as to those claims. However, the court grants the defendants' motion for summary judgment as to all of Canada's other claims and denies his motion for preliminary injunctive relief as to his remaining claims because it is clear that his own deliberate misbehavior led to the cell extraction and that he can avoid alleged excessive force during cell extractions in the future by not misbehaving in the first place.

## I.

On November 18, 2010, Canada participated in a group demonstration at ROSP that involved prisoners covering their cell windows and kicking their cell doors. Some prisoners also blocked the tray slot door with their food trays and broke cell sprinkler heads. In response, ROSP officials asked Canada multiple times to uncover his window and be restrained.[3] After Canada's refusals, prison officials administered a short burst of pepper spray through the cell vent. Prison officials then asked Canada again to clear his window and be restrained. When Canada refused, officers administered another short burst of pepper spray. Officers again ordered Canada to uncover his window and be restrained. After Canada refused, officers

---

[2] See Canada v. Clarke, No. 7:11cv00408, 2011 WL 4910393 (W.D. Va. Oct. 11, 2011) (dismissing without prejudice a complaint naming twenty-eight defendants and containing 187 pages of material); Canada v. Johnson, No. 7:11cv00369 (W.D. Va. Aug. 16, 2011) (dismissing without prejudice a complaint for failure to state a plausible claim for relief); Canada v. Ray, No. 7:08cv00219, 2010 WL 2179062 (W.D. Va. May 28, 2010) (dismissing an excessive fine claim, an access to the courts claim, and a living conditions claim).

[3] On a motion for summary judgment, courts should view facts "in the light depicted" by video evidence "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007).

2

performed a cell extraction.  During the extraction, a team entered Canada's cell and used force to restrain him.  Canada alleges that the team used excessive force because he was fully restrained, non-belligerent, and lying on his stomach when Wright, Tate, Fields, Milgrim, and Large punched, kicked, and scratched him.  He also alleges that Turner, Payne, and Hartsock failed to intervene and that Hartsock hid the defendants' behavior by deliberately moving a handheld camera recording the extraction.  The defendants maintain that as they were opening the cell door Canada fell while approaching the extraction team with a homemade knife, and that the first extraction team member tripped and fell on Canada.  The defendants further state that Canada was resistant and combative during the extraction, and that they used no more force than necessary to overcome this resistance.

Once removed from his cell, Canada went to a shower for decontamination from the pepper spray.  After leaving the shower, officers brought Canada to the floor when he refused to walk and ordered him to cooperate.  Officers then strip searched Canada and put him in ambulatory restraints due to his behavior before and during the extraction.[4]  Once in ambulatory restraints, Canada received a medical evaluation.  ROSP medical staff noted swelling on Canada's face and around his eyes, as well as facial scratches, a small laceration on the back of his head, moderate bleeding from his nose, and a small edema on the back of his neck.  Skin integrity around the restraint areas remained intact.  Officers then drove Canada to a local hospital for examination.  At the hospital, Canada received x-rays and tetanus and diphtheria vaccinations.  All completed tests were normal except for a "questionable nasal fracture." (Moore Aff. ¶ 4, ECF No. 25.)

_____

[4] Ambulatory restraints are used when inmates exhibit "dangerous or disruptive behavior."  (Rowlette Aff. ¶ 6, ECF No. 25.)

Upon returning to ROSP, officers again placed Canada in ambulatory restraints, and medical personnel performed an evaluation. Medical staff checked the ambulatory restraints' fit by placing two fingers under each restraint. Based on video evidence, Canada did not have any complaints at that time. Following examination, Canada went under medical observation and later complained about missing his dinner tray. Canada alleges that he asked Blevins for dinner and that Fannin and Mullins said the tray was withheld because Canada once sued Fannin. Canada also alleges that Fannin and Mullins refused to give him an ice pack that night. The defendants maintain that they reported to work after dinner trays were distributed and cannot recall Canada asking for a dinner tray or an ice pack. Medical records indicate that staff offered Canada an ice pack, but he refused it. (Moore Aff. ¶ 5, ECF No. 25.) On November 20, 2010, after approximately forty-four hours in ambulatory restraints during medical observation, officers removed Canada's restraints.[5] Medical staff then performed an evaluation. At this time, Canada states that the ambulatory restraints lacerated his wrists and ankles and caused swelling; however, video evidence indicates that medical personnel saw only modest swelling and superficial lacerations.

## II.

According to Canada's verified complaint, various defendants punched, kicked, and scratched him after he was fully restrained, nonbelligerent, and lying on his stomach during his cell extraction.[6] The defendants have filed affidavits contradicting Canada's account of these

---

[5] "[T]he maximum continuous time that ambulatory restraints [can] be applied without special approval from the Regional Director or Regional Duty Officer is 48 hours." (Mem. in Supp. of Defs.' Mot. for Summ. J. 9, ECF No. 25.) Policy dictates that "restraints applied within a cell will be removed as soon as the offender's dangerous behavior has subsided, and it is determined the offender no longer poses a threat to himself or others." (Rowlette Aff. ¶ 5, ECF No. 25.)

[6] Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Though the rule is greatly relaxed for *pro se* plaintiffs, it does not require a court to

4

events and they have provided a video recording of the cell extraction.  The court finds a dispute as to the material facts surrounding the cell extraction and the force used to secure Canada. Accordingly, the court denies the defendants' motion for summary judgment as to this claim.[7]

Determinations of excessive force turn on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." United States v. Gore, 592 F.3d 489, 494 (4th Cir.2010) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  In this case, Canada alleges that correctional officers Wright, Tate, Fields, Milgrim, and Large punched, kicked, and scratched him while he was fully restrained and on his stomach. The defendants maintain that Canada fell as he rushed to the cell door with a homemade knife.  After Canada fell, the defendants state that the first extraction team member tripped and fell on Canada and that Canada remained resistant and combative while being restrained.  Having reviewed the video evidence, the court is unable to verify either version of events.  The court therefore denies the defendants' motion for summary judgment as to Canada's excessive force claim.

### III.

Canada alleges that correctional officers Turner, Payne, and Hartsock were deliberately indifferent when they failed to intervene while other defendants used excessive force during his

---

endeavor to discern coherence where there is none.  As far as the court can tell, the defendants in this claim are Wright, Tate, Fields, Milgrim, and Large.

[7] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The party moving for summary judgment bears the burden of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In reviewing a summary judgment motion under Rule 56, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986))

cell extraction.[8]  The court finds a genuine dispute as to the material facts surrounding these events and denies the defendants' motion for summary judgment as to Canada's deliberate indifference claim.

To demonstrate deliberate indifference, a plaintiff must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed and that he actually drew that inference.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Then, a plaintiff must show that the official disregarded the risk by failing to take "reasonable measures" to alleviate the risk.  Id. at 832.  Here, Canada asserts that Turner, Payne, and Hartsock failed to intervene as other defendants used excessive force during his cell extraction and that Hartsock deliberately moved a handheld camera recording the extraction in order to cover up the defendants' behavior.  The defendants maintain that they used appropriate force and that filming the extraction was difficult because numerous officers were required to restrain Canada in his cell.  Having reviewed the video evidence, the court is unable to verify either version of events.  The court therefore denies the defendants' motion for summary judgment on Canada's claim that the defendants were deliberately indifferent by failing to intervene during his cell extraction.

## IV.

Canada alleges that various defendants "sadistically" placed him in ambulatory restraints after his cell extraction and trip to the hospital while other defendants failed to intervene.[9]  The court finds no Eighth Amendment violation and grants the defendants' motion for summary judgment as to these claims.

---

[8] See supra note 6. As far as the court can tell, the defendants in this claim are Hartsock, Payne, and Turner.

[9] See supra note 6.  As far as the court can tell, the defendants for this claim are Milgrim, Fields, Wright, Hartsock, Large, Tate, Payne, Turner, Rowlette, Blevins, Fannin, and Mullins.

Ambulatory restraints are designed and applied to limit a prisoner's movement.  Holley v. Johnson, 2010 WL 2640328, at *10 (W.D. Va. June 30, 2010).  During the restraint period, an inmate wears leg irons and handcuffs with a black box covering the keyhole.  Blount v. Williams, No. 7:05cv00556, 2007 WL 951555, at *7 (W.D. Va. March 23, 2007).  A security waist chain long enough to allow inmates to stand in the upright position runs through the black box and down to the leg irons.  Id.  Thus, the restraints do not totally prevent a restrained prisoner from changing positions, stretching his muscles, sleeping, or eating his meals.  See Jackson v. Morgan, 19 F. App'x 97, 103 (4th Cir. 2001) (unpublished opinion); Holley, 2010 WL 2640328, at *13.

Here, the defendants placed Canada in restraints due to his deliberate misbehavior before, during, and after the cell extraction.[10]  A nurse evaluated Canada after both the restraints' application and removal, Canada remained in restraints for less than the maximum amount of time allowed without special approval, and Canada was under medical observation during his entire time in restraints.  The restraints may have been uncomfortable for Canada or caused minor swelling and superficial lacerations;[11] however, there were no significant injuries, unreasonable risks of serious harm, or evidence of deliberate indifference toward the risks of

---

[10] "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

[11] The Eighth Amendment does not prohibit all application of force or infliction of pain. Gore, 592 F.3d at 494 (4th Cir.2010). "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Id. (quoting Whitley, 475 U.S. at 319 (1986)). In Holley v. Johnson, 2010 WL 2640328, this court found that ambulatory restraints placed on an inmate for forty-eight hours was not excessive force and reasoned that "to the extent the restraints make [changing positions, stretching his muscles, eating his meals, sleeping, or using the toilet] less comfortable and more difficult to execute effectively, they fall squarely among those conditions of prison life that are 'restrictive and even harsh' without rising to the level of unconstitutional punishment." Id. Therefore, under the objective prong of an excessive force claim, the court found a temporary limitation on prisoners due to ambulatory restraints which "causes the inmate no physical injury other than temporary discomfort and embarrassment, simply cannot qualify as a use of force that is 'repugnant to the conscience of mankind.'" Id. (internal citations omitted).

harm.[12] The court therefore finds that the undisputed evidence shows the defendants did not place and keep Canada in ambulatory restraints sadistically or for the purpose of causing harm, and the use of those restraints was not objectively unreasonable.

V.

Canada alleges that Mullins and Fannin violated his Eighth Amendment rights by denying him medical care when they refused to give him an ice pack for pain and swelling. The court finds no basis for an Eighth Amendment violation and grants the defendants' motion for summary judgment as to that claim.

To demonstrate a claim for denial of medical care, a plaintiff must show that prison officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Appropriate treatment for a medical need is "one of medical necessity" and "not simply that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977). Here, the undisputed evidence indicates that ROSP medical staff and personnel at a local hospital treated Canada's injuries. Canada also obtained x-rays and received vaccinations. Furthermore, Canada was under medical observation when Mullins and Fannin allegedly denied him an ice pack. Given Canada's previous treatment and continuous medical observation, an ice pack was "merely desirable" and not "one of medical necessity." The court therefore grants the defendants' motion for summary judgment on this claim.

---

[12] See Woods v. United States, No. 7:10CV00420, 2012 WL 1005010, at *10 (W.D. Va. March 22, 2012) (finding that the uncontested evidence does not support a reasonable inference that the defendants were deliberately indifferent, even though restraints may have caused minor abrasions)

# VI.

Canada alleges that Mullins, Fannin, and Blevins subjected him to cruel and unusual living conditions by withholding his dinner tray on a single occasion.[13]  The court finds no basis for an Eighth Amendment violation and grants the defendants' motion for summary judgment as to that claim.

To support an Eighth Amendment claim challenging prison conditions, a plaintiff must show either that he sustained a serious injury as a result of the challenged conditions or that the conditions created an unreasonable risk of serious damage to his future health, Strickler v. Waters, 989 F.2d 1375, 1380–81 (4th Cir. 1993), and that prison officials acted with deliberate indifference toward the risk of harm, Farmer, 511 U.S. at 835; Taylor v. Freeman, 34 F.3d 266, 271 (4th Cir.1994).  To demonstrate deliberate indifference to a serious risk of harm, a plaintiff must show that a prison official was aware of facts from which he could draw an inference that a substantial risk of harm existed, that the official actually drew that inference, and that the official disregarded the risk by failing to take "reasonable measures" to alleviate the risk.  Farmer, 511 U.S. at 832, 837.  In this case, the deprivation of one meal neither caused Canada to suffer a serious or significant mental or physical injury nor created an unreasonable risk of serious damage to his future health.  The court therefore finds that Canada has not demonstrated a sufficiently serious deprivation, and thus grants the defendants' motion for summary judgment on this claim.

---

[13] To the extent Canada claims the missed dinner was a retaliatory action by the defendants, his claim fails. To state a prima facie claim of retaliation under § 1983, an inmate must allege that, as a result of the retaliatory action, he suffered some adverse impact on the continued exercise of his constitutional rights.  ACLU v. Wicomico County, 999 F.2d 780, 784 (4th Cir.1993).  Missing one dinner had no adverse impact on the continued exercise of Canada's constitutional rights.

## VII.

Canada filed motions for preliminary injunctive relief.  He requests an emergency transfer to prisons outside of southwest Virginia and a permanent transfer to Sussex I state prison to avoid alleged retaliatory attacks and excessive force at ROSP.  He also requests that prisons suspend the use of ambulatory restraints until his case is adjudicated and that prisons stop using ambulatory restraints because the restraints violate his Eighth Amendment rights.  The court denies all of Canada's requests for preliminary injunctive relief.

Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly.  Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir.1991).  As a preliminary injunction temporarily affords an extraordinary remedy before trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing," that he is likely to succeed on the merits at trial; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  Winter v. Natural Res. Def. Council Inc., 555 U.S. 7, 20 (2008).  The plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent."  Direx Israel, Ltd., 952 F.2d at 812.

The court denies Canada's requests for preliminary injunctive relief because Canada has not demonstrated that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief and that the harm is actual and imminent.  In this case, the harm Canada alleges arose out of Canada's deliberate misbehavior that necessitated his forcible cell extraction. Canada can avoid a forcible cell extraction in the future by not engaging in the kind of deliberate disobedience the uncontradicted record shows here.  Finally, Canada has failed to demonstrate

that equity tips in favor of preliminary injunctive relief and that a preliminary injunction is in the public interest.

VIII.

For the reasons stated, the court denies the defendants' motion for summary judgment as to Canada's Eighth Amendment claims of excessive force and deliberate indifference to the use of that force during the cell extraction.  The court grants the defendants' motion for summary judgment as to all of Canada's other claims and denies his request for preliminary injunctive relief.[14]

**ENTER**: July 26, 2012.

UNITED STATES DISTRICT JUDGE

---

[14] Canada's claims for monetary damages against Rowlette and Mullins in their official capacities are not cognizable under § 1983.  See Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989) (holding that neither a state nor its officials acting in their official capacities are persons within the meaning of § 1983).  All of Canada's other claims are against the defendants in their individual capacities.